**SIGNED this 20th day of September, 2023**

*/s/ Nicholas W. Whittenburg*
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

**In re:**

**TEAL PROPERTIES, INC.,**

No. 4:22-BK-12203 NWW
Chapter 11

      **Debtor.**

### MEMORANDUM

Before the court are motions for relief from the automatic stay filed by creditor, Armor Concepts, LLC, (hereinafter "Armor"), against Teal Properties, Inc. and Jerry Lee Teal, Sr., debtors with companion chapter 11 bankruptcy cases pending before this court (hereinafter collectively the "Debtors"). Armor requests that this court terminate the automatic stay so that it may file suit in the Chancery Court of Davidson County, Tennessee regarding prepetition claims for tortious interference with a contract and procurement of breach of contract. The Debtors,

1

having objected to the proofs of claim filed by Armor, oppose the motions, and contend this court is the correct forum to determine the validity of Armor's claims.

On September 11, 2023, the court heard oral arguments on the motions. Neither party requested an evidentiary hearing because there are no facts in dispute relevant to the determination of whether to grant or deny Armor's motions for stay relief. Having considered the motions, the Debtor's objection, and the arguments of counsel, the court denies Armor's motions for the reasons discussed below.

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## I. Background

On September 30, 2022, the Debtors each filed voluntary petitions seeking relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. On December 9, 2022, Armor filed proofs of claim in the Debtors' cases, each in the amount of $744,120.00. The basis of these claims is the Debtors' purported interference with a subleasing contract. Teal Properties leased real property located in Nashville, Tennessee to Armor and Armor, in turn, sublet the property to a subtenant with Teal Properties' consent. Subsequently, the Debtors allegedly induced the subtenant to breach the sublease and began leasing the property directly to the subtenant. The Debtors' interference likewise serves as the basis of the lawsuit Armor seeks to file in the Chancery Court of Davidson County, Tennessee.

The Debtors confirmed their chapter 11 plans on June 7, 2023. According to these confirmed plans, all allowed claims—including any allowed claim held by Armor—are to be paid

in full using proceeds from the liquidation of certain property of the Debtors. That property has been sold and the disbursing agent has released proceeds from the sale to pay all creditors in full save one - Armor.

Respecting Armor's claims, the plans afforded the Debtors thirty days from confirmation within which to file objections to their allowance. The Debtors timely filed objections to Armor's claims, and those objections are currently pending before this court. The disbursing agent now holds in escrow proceeds sufficient to fully satisfy Armor's claims pending a final adjudication of the validity of such claims. Less than a month after the Debtors filed their objections to Armor's proofs of claim, Armor filed its motions seeking relief from the automatic stay. Pursuant to the confirmed plans, all property of the estate vested in the debtors. However, because neither of the Debtors have received a discharge and their respective cases remain open and have not been dismissed, the automatic stay remains in effect. See 11 U.S.C. §362(c)(2).

## II. Legal Analysis

Courts have long recognized that the automatic stay is a fundamental debtor protection. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dept. of Env't Prot.*, 474 U.S. 494, 503 (1986). The purpose of the stay is to afford debtors a "breathing spell" from collection efforts and financial pressures while they reorganize their financial affairs. *Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1436 (6th Cir. 1985); *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 100 (3d Cir. 2008). The automatic stay also serves the interests of creditors by facilitating an orderly administration of the bankruptcy estate and preventing any individual creditor from single-handedly carving up the debtor's assets. *See City of Chicago v. Fulton*, 141 S. Ct. 585, 589

(2021); *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001); *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986).

Under § 362(d)(1), stay relief may be granted "for cause". The decision whether to grant such relief "resides within the sound discretion of the bankruptcy court." *Garzoni v. K-Mart Corp.(In re Garzoni),* 35 Fed. Appx. 179, 181 (6th Cir. 2002). Bankruptcy courts in the Sixth Circuit employ the following five considerations to determine whether cause exists to lift the automatic stay to allow litigation in a non-bankruptcy forum:

1) judicial economy;

2) trial readiness;

3) the resolution of preliminary bankruptcy issues;

4) the creditor's chance of success on the merits; and

5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Id.* See also *In re Motil*, No. 22-10571, 2022 WL 4073666, at *2 (Bankr. N.D. Ohio Sept. 1, 2022). Both the Debtors and Armor presented robust arguments regarding the *Garzoni* factors, and the court applies each factor to guide its decision.

a. **Judicial Economy and Trial Readiness**

The first factor does not simply require the court to consider which venue is more convenient to the parties, but rather requires an analysis of "how much time and energy another court has already invested in the proceedings." *Hornback v. Polylok, Inc. (In re Hornback),* No. 21-8006, 2021 WL 5320418, at *3 (B.A.P. 6th Cir. 2021). In general, bankruptcy courts are more likely to lift the stay where state court litigation has proceeded to the point that both the state court and the parties have

invested substantial resources in the litigation. Simply put, this factor seeks to avoid duplicating efforts in the bankruptcy court. See *In re Motil*, 2022 WL 4073666 at *2 (comparing *In re Martin*, 542 B.R. at 203 (affirming the decision to lift the stay where thousands of pages of written discovery had been exchanged and reviewed) with *In re Sonnax Indus.,* 907 F.2d 1280, 1287 (2d Cir. 1990) (declining to lift the stay because the state court litigation had not progressed to the discovery stage)). The second factor (trial readiness) intertwines with the first factor because "[p]resumably, parties in litigation that is further along are more prepared to go to trial." *Id.* at *3.

Armor contends that the Chancery Court is a more appropriate forum because all the factual predicates to Armor's claim occurred in Davidson County, Tennessee. Moreover, because the property, most witnesses, and the relevant documents are in Davidson County, it argues that judicial economy weighs in favor of granting stay relief. Essentially, Armor's argument is one of convenience, and cannot overcome the fact that neither the parties nor the Chancery Court have invested any time or energy into litigation because no such litigation exists. Meanwhile, these companion chapter 11 cases have been administered under the auspices of this court for almost a year. Armor has participated in this administration by filing claims and objections to confirmation of the Debtors' plans. This court confirmed the Debtors' plans, which are binding on Armor pursuant to 11 U.S.C. §1141(a), providing expressly for the resolution of the Debtors' pending objections to Armor's claims by this court. Further, because no case is pending before the Chancery Court, the state court cannot be more prepared than this court to adjudicate the merits of Armor's claims. These factors strongly favor denial of Armor's motions.

5

b. **The Resolution of Preliminary Bankruptcy Issues**

The third factor examines whether preliminary bankruptcy issues have been resolved. See *Id*. at *7 (citing *In re United Imports*, 203 B.R. 162 (Bankr. D. Neb. 1996) (examples of preliminary bankruptcy issues include determining whether there are assets for distribution and whether a creditor files a proof of claim). This factor weighs in Armor's favor. The Debtors' chapter 11 plans have not only been confirmed but substantially consummated. All allowed claims have been paid and funds sufficient to fully satisfy Armor's claims, if allowed, are now held in escrow. Under these circumstances alone, granting stay relief to allow Armor to liquidate its state law claims against the Debtors before a Tennessee state court seems reasonable.

However, the weight of this factor favoring relief is diminished by the fact that this court is regularly called upon to apply state law in deciding whether to allow or disallow claims. *Kepler v. Estate of Maiers (In re Hinzmann)*, No. 15-10857-7, 2017 WL 83353, at *5 (Bankr. W.D. Wis. Jan. 9, 2017)* ("[b]ankruptcy courts regularly review and apply state law when applicable."). See 11 U.S.C. §502(b)(1) (providing that the court shall disallow any claim that "is unenforceable against the debtor and property of the debtor under any agreement or *applicable law.*"). This court has subject matter jurisdiction over the Debtors' objections to Armor's claims. 28 U.S.C. §1334(b). Proceedings to determine whether to allow or disallow claims are "core proceedings" in which this court may enter final orders. *Id.* §157(b)(2)(B). Most importantly, the determination of whether Armor's claims are allowed or disallowed are central to the final adjustment to the debtor-creditor relationship. See *Bavelis v. Doukas (In re Bavelis),* 773 F.3d 148, 156-157 (6th Cir. 2014) ("Although all the plaintiff's causes of action are based on state law, most of them effectively serve as objections . . . to the defendant's proof of claim . . . . Thus, the relief requested

6

. . . fall[s] foursquare within the core jurisdiction of this Court . . . under 28 U.S.C. 157(b)(2)(B) . . . ."); and (2) the resolution of the objection affects the adjustment of the debtor-creditor relationship under 28 U.S.C. § 157(b)(2)(O)"). Hence, even though no preliminary bankruptcy issues remain outstanding, this factor does not heavily favor lifting the automatic stay.

c.  **The Likelihood of Success on the Merits**

The fourth factor scrutinizes the creditor's likelihood of prevailing in the state court action. Thankfully, "[a] bankruptcy court is not required to be clairvoyant regarding the movant's chance of success on the merits when determining whether to lift the automatic stay." See *In re Motil*, 2022 WL 4073666, at *3 (quoting *In re Hornback*, 2021 WL 5320418, at *5). Given that no state court action exists—no pleadings, discovery, or motions for summary judgment—the outcome is more than speculative and will not impact this decision.

d. **The Burden to the Bankruptcy Estate and the Impact on Other Creditors**

The final factor measures the potential burden to the bankruptcy estate and the impact of such litigation on other creditors. As all other creditors have been fully paid, a decision to grant stay relief would only impact Armor and the Debtors. Though this factor does not consider the impact on the moving creditor, this court notes that if stay relief is granted Armor does gain a more convenient forum for its tort claim litigation. As for the Debtors, they are sure to incur litigation fees and expenses before either court. While Debtors' counsel is located in Nashville, Tennessee, it is not evident that defending against yet-to-be-commenced litigation in a Nashville state court would necessarily be less expensive than litigating the allowance of Armor's claims before the bankruptcy court, a court accustomed to efficiently resolving disputes between debtors and creditors.

Terminating the stay would, however, burden the Debtors by hampering their efforts to reorganize. They filed these chapter 11 cases to attain the "breathing spell" necessary to reorganize and obtain a fresh start. Debtors successfully confirmed plans that provide for the full payment of all allowed claims, and to date, all has gone according to the confirmed plans. All other creditors have been paid, the Debtors have timely filed objections to Armor's proofs of claim, and the escrowed funds stand ready for disbursement after the claims allowance litigation is completed. To the extent Armor's claims are disallowed, the Debtors stand to receive the funds currently held in escrow. The resolution of Armor's disputed claims is part-and-parcel of the Debtors' efforts to reorganize. A decision to terminate the automatic stay to allow Armor to commence litigation in state court would be contrary to the stay's central purpose– to afford the Debtors a breathing spell to complete their reorganization and secure a fresh start.

### III. Conclusion

For the forgoing reasons, the court finds that no cause exists to terminate the automatic stay pursuant to 11 U.S.C. §362(d). Accordingly, by separate orders entered in the Debtors' respective chapter 11 cases, the court denies Armor's motions.

# # #